IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JEROME WEATHINGTON                                                              PLAINTIFF

V.                                                          CIVIL ACTION NO. 4:17-CV-00020-DAS

DONOVAN CLARK, et al.                                                         DEFENDANTS

## MEMORANDUM OPINION

An evidentiary hearing[1] was held in this action on March 2, 2020, to determine whether Plaintiff, Jerome Weathington, was subject to excessive force in violation of his constitutional rights on August 12, 2015, at the Mississippi State Penitentiary ("MSP"). Weathington, proceeding *pro se*, attended said hearing, gave testimony, and elicited testimony from three witnesses. Defendants, represented by counsel, also appeared and gave testimony. Having heard the testimony and reviewed the applicable authority, the Court is ready to rule.[2]

## Plaintiff's Claims

In his complaint, Weathington asserts that, on August 12, 2015, Defendants—Officers Donovan Clark and Jeremy Page[3]—employed excessive force against him. In particular, Weathington alleges that Defendants sprayed him in the face with mace and then beat him with their fists, boots, and radios. Weathington's alleged injuries include stitches to the back of his head and above his left eye, in addition to a sore wrist and swollen face.

## Evidence from the Hearing

The evidence presented at the hearing varied greatly from witness to witness, with

---

[1]Although referred to as an "evidentiary hearing", in the instant case it is, in every respect, a trial on the merits, resulting in a final adjudication of the plaintiff's remaining claims.
[2] The plaintiff consented to have the undersigned conduct all proceedings in this case, including trial and entry of final judgment.
[3]Weathington additionally asserted his claim for excessive force against John Does # 1, # 2, and # 4, but has not been able to identify these purported individuals.

portions of testimony corroborating *some* of Weathington's allegations, while others significantly contradicted his claims. The Court summarizes each witness' relevant testimony as follows:

*Alex Hunter*

Alex Hunter, Weathington's former cellmate, testified first. According to Hunter, he and Weathington had been having some issues which were escalating into a physical conflict. During shower call, he and Weathington devised a plan to get Weathington moved from their cell. Weathington told Hunter that he was not going back into their cell and would "buck"—i.e. disobey the officers' orders—and do whatever he needed to do to be reassigned to another cell. Hunter testified that he advised Weathington multiple times that his plan to "buck" would result in a physical altercation with the officers.

After shower call, officers ordered everyone back into their cells. Weathington refused to comply. Defendants subsequently directed Weathington three or four more times to return to his cell, but he continued to resist. Defendants then sprayed Weathington with mace and he ran to the sally port, which Hunter explained was a breach of security.[4] Hunter testified that Defendants hit or kicked Weathington in the back of head and left side of his forehead, anywhere from three to five times. According to Hunter, Weathington did not fight back. Hunter testified that Weathington returned to their cell a few days later with injuries to his head, including stitches above his left eye and the back of his head.

*Chaz Pinkston*

Chaz Pinkston testified after Hunter. At the outset, the Court notes that Pinkston's recollection of the incident differs significantly from other witness testimony. According to

---

[4] The sally port allows inmates and officers to enter and exit the zone. Weathington's presence in the sally port, therefore, posed a potential security risk and, according to Hunter, necessitated additional force by Defendants.

Pinkston, the incident occurred after a recreation call. The tower officer ordered the inmates back into their cells, but Weathington refused to return to his cell and asked to speak to someone about issues with his canteen privileges. Pinkston further testified that, after Weathington refused to return to his cell, Officers Clark, Page, and an unidentified Captain and Lieutenant came to the zone.

According to Pinkston, the captain told Clark to "take off", i.e. hit Weathington. Pinkston further testified that Clark, the captain, and the lieutenant escorted Weathington into the hallway and began beating on him, punching him three to four times, until Weathington lost consciousness. Pinkston also stated that Officer Page took no part in the beating and was actually trying to help Weathington initially but did spray mace in Weathington's face after he was rendered unconscious. Pinkston testified that he later saw Weathington with stitches somewhere on his head.

*Charlie Taylor*

Weathington's last witness to testify was Charlie Taylor. Taylor testified that the incident occurred after shower call. According to Taylor, unidentified officers ordered the inmates to return to their cells, yet Weathington refused. Taylor testified that he saw Weathington get sprayed with mace, but he could not identify the officer responsible. Taylor stated that he did not recall anything else about the incident.

*Donovan Clark*

Officer Donovan Clark, a defendant in this action, also took the witness stand. Clark testified that, on the date in question, he and Officer Jonathan Brewer[5] were called to Unit 29G B-Zone to assist with shower call. At some point, Brewer was called to another building for shower call, leaving just Clark and the tower officer in the zone. After showering, Weathington told Clark

---

[5] Brewer, previously a defendant in this action, was dismissed for failure to serve.

3

that he was not going back to his cell and that he (Clark) needed to go get someone. Clark testified that he then turned and started walking toward the sally port to get help. As he was walking away, Clark looked back and saw Weathington following him. Clark testified that Weathington told him that he was going to exit the zone with him. Clark advised Weathington that he was not permitted in the sally port because it would allow him to exit the building and constituted a breach of security.

Weathington then assaulted Clark, slapping his hand and striking him in the face. Clark stated that he and Weathington began trading punches until Weathington got his bed sheet and tried to put it over Clark's head. Clark testified that eventually Officer Page came in and told Weathington to "catch the wall," i.e. to stand against the wall, facing the wall, with his hands placed on the wall. As Weathington refused to obey his order, Page then sprayed Weathington with mace. Clark testified that he and Page then took Weathington down and cuffed him. Another officer immediately transported Weathington to medical. According to Clark, Weathington never lost consciousness.

*Jeremy Page*

Officer Jeremy Page, the other defendant in this action, testified after Clark. Page usually worked in the clinic. On the date of the incident, however, he responded to a radio call "for all available staff to Unit 29G B-Zone." Page testified that, when he arrived in the zone, Clark and Weathington were already engaged in a shuffle, and that Weathington had a sheet in his hands. Page ordered Weathington to "catch the wall," but he refused to comply. Page testified that he then sprayed one burst of mace in Weathington's face. Weathington, however, acted like the mace did not bother him. Page stated that he and Clark proceeded to tussle a bit longer with Weathington until they finally got him down and handcuffed him. Page asserted that, although Clark and Weathington did hit each other, he did not hit or kick Weathington, nor did Weathington lose

4

consciousness. Page further testified that, at the time, Defendants' primary concern was getting Weathington and the situation under control.

*Jerome Weathington*

Weathington testified as rebuttal witness to counter Defendants' testimony. Weathington conceded that he repeatedly refused to comply with the officers' orders to return to his cell and attributed his resistance to issues with his cellmate. He stated that someone sprayed him with mace, but that it was not Clark or Page. Weathington then ran to the sally port, where Defendants scuffled with him and knocked him to the ground. He further asserted that he lost consciousness during the incident and believes that the officers kicked him repeatedly. Weathington explained that he had a sheet during the altercation because he had just returned from shower call. Weathington agreed that Defendants were justified in using some force to quell the situation, but opined that the force used was "overkill," and maintained that he did not lay a hand on Defendants.

**Facts of the Case**

Of this testimony, the following is what the Court finds credible and concludes are the facts of the case:

In the days before the incident in question, tensions escalated between Weathington and Hunter, so much so that both believed it would likely culminate into some sort of physical conflict. Weathington, therefore, set out to do whatever he could to be moved to another cell, including intentionally disobeying the officers' orders. The incident occurred on August 12, 2015, following shower call in MSP Unit 29G B-Zone, during a lockdown. After shower call, Clark ordered the inmates, more than once, to return to their cells, but Weathington refused. Weathington's refusal to comply with orders led to some sort of tussle between him and Clark,

with punches being thrown. During the scuffle, Weathington had a sheet in his hands which Clark perceived as a threat. At some point, Weathington tried to gain access to the sally port—an undisputed security breach. Page arrived at the scene after the altercation had already begun and ordered Weathington to stand against the wall. Weathington, however, still refused to comply. Page then sprayed Weathington in the face with mace. The use of mace did not immediately subdue Weathington and, consequently, he and Defendants continued to skirmish, but only briefly. Clark and Page eventually cuffed Weathington, and he was then transported to medical. As a result of this incident, Weathington suffered injuries to his head.[6]

## **Applicable Law**

In considering a claim that prison officials used excessive force against a prisoner in violation of the Eighth Amendment, the court must balance the constitutional rights of the prisoner with the needs of prison officials to effectively use force to maintain prison order. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). To establish liability on the part of the defendants, the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Id.*; *see also Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). In assessing whether a defendant applied force with the intent to cause harm, the court may consider "(1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Rankin*, 5 F.3d at 107 n.5 (citation omitted).

---

[6] The Court notes that no medical records were admitted into evidence.

A prisoner need not prove "significant" or "serious injury" in order to prevail in an Eighth Amendment claim of excessive force. *Hudson*, 503 U.S. at 7. "The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." *Id.* But, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993). A *de minimus* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993). "Not every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (citation omitted). A single incident of force or a single blow is *de minimus* and thus does not violate the Eighth Amendment. *Jackson*, 984 F.2d at 700.

## Discussion

Weathington's claim for excessive force ultimately turns on one issue: whether Defendants' actions were taken in a "good-faith effort to maintain or restore discipline," or, instead, were applied "maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6-7. In determining this issue, the Court briefly considers the factors set forth above.

*Extent of Weathington's Injuries*

Although the plaintiff's medical records were not admitted into evidence, witness testimony demonstrated that Weathington suffered injuries to his head, necessitating stitches above his left eye and the back of his head. While not necessarily "severe," the Court finds these injuries to be more than mere *de minimus*. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th

7

Cir. 1997) (affirming dismissal of prisoner's excessive force claim, holding that prisoner's sore bruised ear was *de minimus* injury); *Lee v. Wilson*, 2007 WL 2141956, at *1 (5th Cir. July 26, 2007) (affirming dismissal of prisoner's excessive force claim, holding that prisoner's split lip was *de minimus* injury). Thus, the Court finds this factor to weigh slightly in Weathington's favor.

*Need for the Application of Force*

Based on the evidence presented, and Weathington's candid admission, there is no question that the circumstances warranted an application of force. Before the incident even began, Weathington set out to cause a disturbance as he decided that he would do whatever necessary to avoid returning to his cell, including disobeying the officers' orders. True to his plan, Weathington caused a disturbance and refused multiple orders to return to his cell. The repeated failure to obey orders, especially given that the facility was under a lockdown at the time, clearly necessitated force by Defendants.

Moreover, the evidence further indicated that, not only did Weathington refuse to return to his cell, he also attempted to gain access to the sally port, which is an undisputed security breach. He then engaged in a scuffle with Clark, with punches being thrown—all while holding a sheet, which could reasonably be perceived as posing a threat. As the altercation ensued, Page ordered Weathington to stand against the wall, but Weathington continued to resist. In sum, this factor weighs heavily in Defendants' favor.

*Relationship Between the Need and the Amount of Force Used*

This factor, too, weighs in favor of Defendants. Weathington set out to cause a problem and he succeeded. While MSP was under lockdown, he refused multiple orders to return to his cell, attempted to gain access to the sally port, scuffled with an officer, and refused orders to

8

"catch the wall." Following these actions, Page sprayed one burst of mace in Weathington's face. The use of mace in the prison context is fairly common and generally does not result in serious injury. Under these circumstances, Page's use of mace was clearly reasonable.

Evidence presented further indicated that Clark hit Weathington a few times during their altercation. Given Weathington's behavior, however, the Court finds Clark's actions to be reasonable. It bears repeating that Weathington had refused Clark's multiple orders to return to his cell; he followed Clark to the sally port, while holding a sheet in his hands; he then proceeded to tussle with Clark; and this all occurred while Clark was the only officer in the zone, aside from the female officer in the tower. Had Weathington simply complied with orders, no physical force would have been necessary. The Court finds that Clark's actions were necessary in attempting to take control of the situation—a situation of Weathington's own making.

*Threat Perceived by the Prison Guards*

At the time of the incident, the facility was under a lockdown. Notwithstanding Clark's multiple orders to the contrary, Weathington refused to return to his cell. Not only did Weathington refuse to return to his cell, but he also followed Clark to the sally port. As previously explained, an inmate's presence in the sally port is a breach of security because it could potentially allow him to exit the building. Moreover, Weathington held a sheet during the altercation, which Clark reasonably perceived as a threat, especially given that, at the time, he was the only officer in the zone.

Once Page arrived, Weathington continued to scuffle with Clark despite Page's orders to "catch the wall." Defendants reasonably perceived Weathington's actions—repeated refusal to obey orders, attempt to gain access to the sally port, and struggling with Clark—as posing a threat to their safety and the security of the facility. The Court additionally notes that

Weathington stands six feet six inches (6'6") tall and weighs approximately two hundred and sixty-nine (269) pounds,[7] and his size alone poses a threat to officers, especially to those of smaller stature. Thus, this factor weighs in Defendants' favor.

*Efforts to Temper the Response*

The Court finds that Defendants made sufficient efforts to temper their response and, consequently, this factor falls in their favor. Clark did not utilize any physical force until *after* Weathington had refused to comply with multiple orders and followed him to the sally port while holding a sheet. Even then, Clark and Weathington only exchanged a few punches *each*. When Page arrived, he first ordered Weathington to "catch the wall," but Weathington instead continued brawling with Clark. Page then sprayed Weathington in the face with only one burst of mace.

In sum, the Court finds that Weathington failed to demonstrate that Defendants' actions were applied "maliciously and sadistically to cause harm." Rather, the Court finds that the evidence presented shows that Defendants actions were taken in a "good-faith effort to maintain or restore discipline." As such, Weathington's excessive force claim must be dismissed.

## **Conclusion**

Based on the foregoing discussion, the Court finds that Weathington has failed to prove his claim for excessive force against Defendants, and judgment will be entered in their favor. A separate final judgment in accordance with this Memorandum Opinion will issue today.

**SO ORDERED**, this the 16th day of March, 2020.

/s/ David A. Sanders
DAVID A. SANDERS
UNITED STATES MAGISTRATE JUDGE

---

[7] *See* Mississippi Department of Corrections Inmate Search, https://www.ms.gov/mdoc/inamte/Search/GetDetails/F08121.